Thurman, C. J.
That taxes due upon lands are a personal debt of him in whose name the lands stand listed when the taxes accrue, as well as a lien upon the lands, unless “the same are not his property, and are erroneously charged in his name for taxation," is very clear from the provisions of our statutes. Swan’s Stat. (new ed.) 68, sec. 41; 1010, sec. 19; 1015, sec. 2.
That the rule of caveat emptor applies to purchases at shexdff’s sales upon execution has been uniformly held in this state, and the doctrine is too well settled to be shaken. Vattier & Lytle’s Ex’rs, 6 Ohio, 477.
280] *From these premises it follows, that had the taxes in question been collected from Creps, by a distraint of his personal property, or other proceeding under the tax laws, he would have been without recourse on Baird, notwithstanding the lands of the latter would thereby have been relieved from an incumbrance.
On the other hand, had they been made by a sale of Baird’s lands, he woxxld have had no action against Cx’eps, notwithstanding it was the debt of the latter that would thus have been paid.
For there was no relation of principal and surety between these parties. By purchasixxg the land, Baird did not become personally bound to pay the overdue taxes, and. eonsequexxtly Creps could not compel him to pay them.
On the other hand, Baird took the land without any warx*anty, expx’ess or implied, and therefore he had no right to compel Creps to pay.
Did he compel him to pay? It is ax’gued that he did not, because it does not expressly appear that it was upoxx. his motion that the order of the court was made.
This point has given us some difficxxlty, but we incline to think that the evidence tended to prove that the order was made at Baird’s instance, and if so, it should have gone to the jury. There was no one, so far as, appears, who had any interest to procure it but Baird. Creps evidently had xxo such interest; for if it had not been made he would have got the money, and possibly would never have been compelled to make payment. It is presumable that he had no personal px’operty subject to distx*aint sufficient to pay the taxes, for if he had, it is not probable the lands would have remained delinquent. It was his interest, therefore, to get the money, and let the taxes *281 be made out of the lands, as thereby his debt would be discharged without, as I b ave before shown, his incurring any new responsibility.
Neither had the judgment creditor any interest to make the motion, for ho was fully*paid. The fund out of which the taxes were discharged was surplus money, remaining after the execution was satisfied.
*Nor is it reasonable to suppose that the county treasurer, [281 who was no party to the proceedings, interposed and made it. It was not incumbent on him, in the discharge of his official duties to do so, and ho would hardly have volunteered to interfere when there was no necessity for his action; the lien on the lands being an ample security for the taxes.
Under these circumstances, and the record being silent as to who procured the order, it can not be said that a jury would have been unwarranted, in the absence of any proof to-the contrary, in finding that it was made upon the motion of Baird. At least that was the tendency of the proofs, and it was therefore the province of the jury to pass upon them. Had the testimony gone to the jury, its sufficiency would have been matter of argument before them; or, Baird might have introduced rebutting testimony, if it existed, to overthrow the presumption arising upon the plaintiff’s showing.
Another point is, that the action could not be maintained, because, as the money went to pay a debt of Creps, it was not money paid to Baird’s use.
But no one has a right to take the money of a debtor, and without his consent, express or implied, apply it to the payment of his debts; and if such payment inure, as in the present case it did, to the benefit of such a volunteer, he may well be made liable in an action for money paid for his use. The money in question belonged to Crop's, and he alone had the right to say, in the absence of any legal adjudication to the contrary, where it should go. Baird had no right, of his own mere motion, to apply it to the payment of the taxes, and thus disineumber his lands, nor can he find protection in an order procured upon his motion, which the court had no jurisdiction to make, and which has been totally reversed.
In saying this, I by no means wish to be understood as holding that the actor is always liable for the error of the court, committed at his instance; nor do I mean to deny to purchasers, at judicial *282, 283 282] . sales, the well-known equitable relief ^resulting from a marshaling of assets, when tho creditor has more than one fund, to resort to. This decision is not to be understood as a precedent beyond the facts of the case. This is not a* case in which an erroneous decree was rendered on a bill to marshal assets, and in which, upon a reversal of the decree, it would be proper to make the individual receiving the money refund it. It is the case of an order made without authority, at the instance of one who had no right to ask it; by which money belonging to another, and upon which the creditor had no lien, has been applied to discharge an incumbrance upon the mover’s estate, which he had no right to compel the owner of the money to remove, and the money thus applied, has,gone into the public treasury, and been distributed among the state, county, township, and school district organizations. It is, therefore, quite distinct from the case of a bill to marshal assets. To the maintenance of such a bill, it is indispensable that the creditor have a lien on the several funds out of which payment is to be imade. He can not be driven to seek payment out of assets upon •which he has no lien, nor is there, even as against the debtor, any ..equity, cognizable by the chancellor, upon which to found a decree do that effect. But here the creditor had no lien upon tho money.
Again, the bill must be preferred to a court having jurisdiction do pronounce the decree sought. But here the court had no authority to make the order in question.
We are therefore of opinion, under all the circumstances of -this case, that the right of Creps, to maintain the action, is as ■valid as if Baird, in person and without an order of the court, had (taken the money and paid the taxes.
One more question remains'. Could Creps maintain his action ■without an order of distribution directing the money to be paid to !him?
It is claimed that he could not, because the statute requires the court to make an order of distribution of the proceeds of the sale of real estate upon execution, and it is argued that until such an 283] order is made, awarding the surplus, after *the satisfaction of the execution to the judgment debtor, he has no property in it. .In support of this proposition, we are referred to the case of Dawrson v. Holcombe, 1 Ohio, 275, in which it was held that money in (the hands of a sheriff, the proceeds of a judgment sale of real .estate, and in regard to which no order of distribution had been *284 made, could not be attached as the property of the plaintiff in execution. The court said: “ While the money remains in the hands of the officer, it is in the custody of the law. It does not become the property of the judgment creditor till it is paid over, and conseqtiently is not liable to be attached as his. The writ of attachment could not supersede the exection, or release the sheriff from a literal compliance with its cómmand, which required him to bring the money into court, so that it might be subject to their order. Cases frequently occur in which the right to receive the proceeds of a judgment is contested, and in which the decision of the court is necessary as a guide to the officer.”
It is obvious that the case before us is very different from that cited. That was the case of an attachment of the money. This is an action of assumpsit for money paid. There the question was whether the judgment creditor, who might never obtain an order for the money, had an attachable interest in it. Here there was no one setting up any claim to the surplus but Creps. There the sheriff had not brought the money into court. Here he did bring it in. There the sale had not been confirmed. Here it was not only confirmed, but the judgment was ordered to be paid out of its proceeds. There there was no recognition by the court of the creditor’s right to the money. Here the surplus was declared, in effect, to belong to Creps, to whom, in the absence of a paramount claim, the statute required it to be paid.
For these and other reasons we see-nothing in that decision that militates against the plaintiff’s right of action.
When this case was in the district court I concurred, though with serious doubts, in the decision that was made. A more thorough examination than there was opportunity *then to make has [284 convinced me that the decision was erroneous, and of this opinion are my brethren also.
The judgment must be reversed, and a new trial awarded.